# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| MARYANN OLSZEWSKI, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br>v.<br><br>THE CBE GROUP, INC.,<br><br>        Defendant. | Case No.: 19-cv-1253<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Ch. 421-427, Wis. Stats.

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Maryann Olszewski is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes.

5. Plaintiff is a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that Plaintiff engaged in a consumer transaction.

6. Defendant The CBE Group, Inc. ("CBE") is a foreign business corporation with its principal offices located at 1309 Technology Parkway, Cedar Falls, Iowa 50613.

7. CBE is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. CBE is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. CBE is licensed as a "Collection Agency" by the Division of Banking in the Wisconsin Department of Financial Institutions pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. Ch. 74.

10. CBE is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

11. On or about January 13, 2019, Defendant mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "Creditor: We Energies." A copy of the letter is attached to this complaint as Exhibit A.

12. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by hand.

13. Upon information and belief, Exhibit A is a form debt collection letter used by Defendant to attempt to collect the alleged debt.

14. Upon information and belief, Exhibit A is the first written communication Defendant mailed to Plaintiff regarding the alleged debt referenced in Exhibit A.

2

15. Exhibit A contains a statement that largely reflects the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector send the consumer along with, or within five days of, the initial communication:

> Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days after receiving this notice, that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor if different from the current creditor.

16. Upon information and belief, the alleged debt referenced in Exhibit A was incurred for household utility services.

17. Exhibit A falsely threatens to disconnect Plaintiff's utility services.

18. Exhibit A contains the following:

> We are committed to helping you resolve your debt. If you cannot pay the full balance at this time, we have many payment options that may meet your individual needs. Please give us a call at (866)910-3135. We are here to help.
>
> Disconnect Date:
> Service Address:

19. Exhibit A does not state a disconnect date and does not state a "Service Address."

20. Upon information and belief, the utility services referenced in Exhibit A had already been disconnected.

21. Upon information and belief, 2564B South 11th Street, Milwaukee, Wisconsin was the service address at which the utility services referenced in Exhibit A.

22. As of the date of Exhibit A, Plaintiff no longer lived at 2564B South 11th Street, Milwaukee, Wisconsin.

3

23. The unsophisticated consumer would understand the oblique, unspecified references to a "Disconnect Date" and "Service Address" to be a threat that Defendant or the creditor planned to disconnect utility services at Plaintiff's *current* residence.

24. Upon information and belief, Defendant intentionally made the oblique, unspecified reference to "disconnection" at an unidentified "service address" in order to impart in the unsophisticated consumer a sense of anxiety in the event the consumer did not pay the debt as soon as possible.

25. Upon information and belief, the creditor referred the debt referenced in Exhibit A to Defendant along with a portfolio of other consumer debt accounts.

26. Upon information and belief, the creditor referred the debt referenced in Exhibit A to Defendant along with an electronic file that included various substantive information about the debts in the portfolio.

27. Upon information and belief, the electronic file including various substantive information about the debts in the portfolio included the disconnection date and service address for each debt. *See, e.g., Olszewski v. Midwest Receivable Solutions LLC*, No. 18-cv-968, Dkt. No. 1 ("Class Action Complaint") at ¶ 24, *filed* June 26, 2018 (E.D. Wis.).

28. Upon information and belief, Defendant intentionally omits the disconnection date and service address information in order to impart in the unsophisticated consumer a false sense of urgency.

29. Upon information and belief, Defendant has no ability to initiate disconnection of utility services at Plaintiff's new residence.

30. Upon information and belief, Defendant has no insight into or control over the creditor's disconnection strategies.

31. Upon information and belief, Defendant had no knowledge whether the creditor intended to disconnect utility services as Plaintiff's new residence.

32. Exhibit A represents to the unsophisticated consumer that Defendant is regularly engaged in making decisions about disconnection of utility services.

33. Exhibit A threatens the unsophisticated consumer with the prospect that Defendant could disconnect utility services at Plaintiff's current residence at any time.

34. Upon information and belief, Defendant does not make any decisions about utility disconnection and could not disconnect utility services on the creditor's behalf.

35. Exhibit A falsely represents or implies that nonpayment of the debt could result in utility disconnection at a service address that is not associated with the utility services referenced in Exhibit A.

36. The false representation that Defendant or the creditor was contemplating disconnection of utility services at Plaintiff's new residence has the purpose and effect of inducing anxiety in the unsophisticated consumer, and increasing the priority of the debts that FCS is collecting under false pretenses.

37. The unspecified "disconnection date" implies to the unsophisticated consumer that disconnection at her new residence could occur at any time, including within the thirty-day debt validation period described in the validation notice.

38. Plaintiff read Exhibit A.

39. Plaintiff was confused by Exhibit A.

40. The unsophisticated consumer would be confused by Exhibit A.

41. Plaintiff had to spend time and money investigating Exhibit A.

5

42. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A.

### *The FDCPA*

43. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and confusing or inaccurate information about the debt itself or the debt collector is a concrete and particularized injury. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223

6

F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

44. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt

collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses"). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

45. Misrepresentations of the character, amount or legal status of any debt and misrepresentations of potential consequences of non-payment, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Encore Receivable Management, Inc.*, 18-cv-1484-WED, 2019 U.S. Dist. LEXIS 134377 (E.D. Wis. Aug. 9. 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such

8

misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

46. The FDCPA prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

47. 15 U.S.C. § 1692e(2)(a) specifically prohibits "the false representation of the character, amount, or legal status of any debt."

48. 15 U.S.C. § 1692e(5) specifically prohibits "The threat to take any action that cannot legally be taken or that is not intended to be taken."

49. 15 U.S.C. § 1692e(6)(B) specifically prohibits "the false representation that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to become subject to any practice prohibited by this subchapter."

50. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

51. 15 U.S.C. § 1692f generally prohibits the use of any "unfair or unconscionable means to collect or attempt to collect any debt."

52. 15 U.S.C. § 1692g states, in part:

> (a) **Notice of debt; contents**
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> . . .
>
> (3) a statement that unless the consumer, within thirty days after recept of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion

9

thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

(b) **Disputed Debts**

. . .

Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

### *The WCA*

53. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

54. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

55. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

56. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

57. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

58. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

59. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

60. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

61. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

62. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

11

63. Wis. Stat. § 427.104(1)(k) specifically prohibits a debt collector from using "a communication which simulates legal or judicial process or which gives the appearance of being authorized, issued or approved by a government, governmental agency or attorney−at−law when it is not.

64. Wis. Stat. § 427.104(1)(L) specifically prohibits a debt collector from "Threaten[ing] action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

65. The Wisconsin Department of Financial Institutions had found that, when a licensed Collection Agency engages in conduct that violates the FDCPA, its conduct can reasonably be expected to threaten or harass debtors. Wis. Admin. Code § 74.16(9).

## **COUNT I – FDCPA**

66. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

67. Exhibit A makes oblique, unspecified references to disconnection of utility services at an unidentified service address.

68. The unsophisticated consumer would understand the unspecified disconnection date and service address references to mean that Defendant and/or the creditor was contemplating disconnection of utility services as Plaintiff's new residence.

69. The impression that Defendant and/or the creditor was contemplating disconnection of utility services as Plaintiff's new residence was false

70. Defendant violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(6), and 1692e(10), 1692f, 1692g(a)(3), 1692g(a)(4), and 1692g(b).

## COUNT II – WCA

71. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

72. Defendant is licensed as a "Collection Agency" by the Division of Banking in the Wisconsin Department of Financial Institutions.

73. <u>Exhibit A</u> falsely threatens the unsophisticated consumer with the prospect of utility service disconnection at any time at her new residence.

74. <u>Exhibit A</u> violates the FDCPA.

75. Defendant violated Wis. Stat. § 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

76. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between August 29, 2018, and August 29, 2019 inclusive, (e) that was not returned by the postal service.

77. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

78. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA and the WCA.

79. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

80. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

81. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

82. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) injunctive relief;

(d) attorneys' fees, litigation expenses and costs of suit; and

(e) such other or further relief as the Court deems proper.

Dated: August 29, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge_____
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com

14

meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com